IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MELLACONIC IP, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 22-540 (CFC) |
| | ) | |
| AVAST SOFTWARE, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S OPENING BRIEF IN SUPPORT OF ITS
MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**

POLSINELLI PC
Stephen J. Kraftschik (#5623)
222 Delaware Avenue, Suite 1101
Wilmington, DE 19801
(302) 252-0924
skraftschik@polsinelli.com

*Attorneys for Defendant*

William B. Kircher
AVEK IP, LLC
8900 State Line Road, Suite 500
Leawood, KS 66206
(913) 549-4700
bkircher@avekip.com

May 18, 2022

# <u>TABLE OF CONTENTS</u>

                                                                                  **Page**

I.    NATURE AND STAGE OF THE PROCEEDINGS ........................................1

II.   SUMMARY OF ARGUMENT ........................................................1

III.  STATEMENT OF FACTS ..............................................................3

IV.   ARGUMENT .................................................................................4

    A.   The Claims of the '435 Patent Are Invalid Pursuant to 35 U.S.C. § 101 .4

        1.   Legal Standard Under 35 U.S.C. § 101 .............................................4

        2.   Alice Step 1:  The '435 Patent Claims Are Directed to an Abstract
            Idea........................................................................................5

            (a)   Using location information to authenticate a user is an abstract
            idea.5

            (b)   The claims are not directed to an improvement to computer
            functionality. ...............................................................10

        3.   *Alice* Step Two: The '435 Patent Claims Fail to Recite an Inventive
            Concept, Either as Individual Elements or as an Ordered
            Combination...............................................................................12

        4.   The Unasserted Claims of the '435 Patent Similarly Fail under §
            101.............................................................................................16

        5.   Dismissal is Appropriate Because No Material Factual Disputes
            Exist. ........................................................................................17

    B.   Plaintiff's Indirect Infringement Claim Should Be Dismissed ...............18

V.    CONCLUSION ............................................................................19

83487203.2

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aatrix Software, Inc. v. Green Shades Software, Inc.*,
  890 F.3d 1354 (Fed. Cir. 2018) ......................................................12

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
  573 U.S. 208 (2014)...............................................................*passim*

*Automated Tracking Sols., LLC v. Coca-Cola Co.*,
  723 F. App'x 989 (Fed. Cir. 2018) .................................................12

*BASCOM Glob. Internet Servs., Inc. v. AT&T Mobility LLC*,
  827 F.3d 1341 (Fed. Cir. 2016) ......................................................13

*Berkheimer v. HP Inc.*,
  890 F.3d 1369 (Fed. Cir. 2018) ......................................................18

*Bilski v. Kappos*,
  563 U.S. 593 (2010)........................................................................7

*buySAFE, Inc. v. Google, Inc.*,
  765 F.3d 1350 (Fed. Cir. 2014) ......................................................11

*Callwave Commc'ns, LLC v. AT&T Mobility, LLC*,
  207 F. Supp. 3d 405 (D. Del. 2016).............................................7, 15

*Cleveland Clinic Found. v. True Health Diagnostics LLC*,
  859 F.3d 1352 (Fed. Cir. 2017) ......................................................18

*Content Extraction & Transmission LLC v. Wells Fargo Bank, NA*,
  776 F.3d 1343 (Fed. Cir. 2014) ......................................................16

*DDR Holdings, LLC v. Hotels.com, L.P.*,
  773 F.3d 1245 (Fed. Cir. 2014) ......................................................11

*Elec. Commc'n Techs., LLC v. ShoppersChoice.com, LLC*,
  958 F.3d 1178 (Fed. Cir. 2020) ........................................................5

*Enfish, LLC v. Microsoft Corp.*,
  822 F.3d 1327 (Fed. Cir. 2016) ......................................................10

83487203.2

*GoDaddy.com LLC v. RPost Commcn's Ltd.*,
    2016 WL 3165536 (D. AZ. June 7, 2016), *aff'd*, 685 Fed. Appx.
    992 (Fed. Cir. 2017)..............................................................................10

*Kinglite Holdings, Inc. v. Micro-Star Int'l Co.*,
    2015 WL 6437836 (C.D. Cal. Oct. 16, 2015) .................................9, 10

*Prism Techs. LLC v. T-Mobile USA, Inc.*,
    696 F. App'x 1014 (Fed. Cir. 2017) .........................................5, 8, 14

*In re TLI Commc'ns LLC Patent Litigation*,
    823 F.3d 607 (Fed. Cir. 2016) ...........................................2, 4, 14, 15

*Ultramercial, Inc. v. Hulu, LLC*,
    772 F.3d 709 (Fed. Cir. 2014) ................................................2, 5, 18

*West View Research, LLC v. Bayerische Motoren Werke AG*,
    226 F. Supp. 3d 1071 (S.D. Cal. Dec. 30, 2016)...........................9, 14

*ZapFraud, Inc. v. Barracuda Networks, Inc.*,
    528 F. Supp. 3d 247 (D. Del. 2021).............................................2, 18

**Statutes**

35 U.S.C. § 101 ..................................................................................*passim*

## I.   NATURE AND STAGE OF THE PROCEEDINGS

This is the 34th case (and the 19th in Delaware) filed by Plaintiff Mellaconic IP, LLC ("Mellaconic") asserting U.S. Patent No. 9,986,435 (the "'435 Patent", Compl. Ex. A).  Of these cases, 28 have been dismissed, typically within months of filing.  Of the remaining six active cases, five are in this District.[1]

## II.   SUMMARY OF ARGUMENT

Defendant Avast Software, Inc. ("Avast") moves to dismiss Mellaconic's Complaint for failure to state a claim on two grounds: (1) all claims of the '435 Patent are invalid pursuant to 35 U.S.C. § 101, and (2) Plaintiff has failed to state a claim for indirect infringement because it fails to assert pre-suit knowledge of the patent and purports to plead a forward-looking claim of indirect infringement based only on service of the Complaint.

The claims of the '435 Patent fail both step one and step two under *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 217-218 (2014), and the '435 Patent is thus invalid pursuant to 35 U.S.C. § 101.  As to *Alice* step one, the '435 Patent claims an abstract idea of using location information to authenticate a user and performing some requested action, a concept that has been used for millennia, for example in verifying a visitor who has arrived at a front door and knocked to signal that he is

---

[1] Two earlier defendants in this Court (Fantasia Trading LLC ("Fantasia") in C.A. No. 21-945 and Carrier Global Corporation ("Carrier") in C.A. No. 21-1853) filed motions to dismiss based primarily on patent-ineligibility pursuant to 35 U.S.C. § 101.  Mellaconic voluntarily dismissed both cases without prejudice just a few weeks later without responding either Fantasia or Carrier's motion to dismiss.

83487203.2

outside and would like to be let in, and the inhabitant hearing the knock and unlocking the door to allow entry.  Applying this well-known concept to the context of electronic communications does not make the concept any less abstract. *See In re TLI Commc'ns LLC Patent Litigation*, 823 F.3d 607, 611 (Fed. Cir. 2016) ("[A]lthough the claims limit the abstract idea to a particular environment ... that does not make the claims any less abstract for the step 1 analysis").  The claims' recitation of results-based, functional language reinforces the abstractness of the claims pursuant to § 101.

As to *Alice* step two, the '435 Patent claims do not amount to an inventive concept, either individually or in combination. Instead, the '435 Patent claims recite routine steps that are carried out by conventional hardware components, such as a "first device," a "second device," and a "third device." The claims do not even require a "computer," further underscoring their generic nature. Such claims have been uniformly rejected as failing to provide an inventive concept. *See Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 716 (Fed. Cir. 2014) ("'[C]onventional steps, specified at a high level of generality,' [are] insufficient to supply an 'inventive concept.'") (citation omitted).

Avast also moves to dismiss Plaintiff's claim for indirect infringement where Avast's alleged knowledge of the '435 Patent is based only on the service of the Complaint.  *ZapFraud, Inc. v. Barracuda Networks, Inc.*, 528 F. Supp. 3d 247, 252

(D. Del. 2021) ("[T]he operative complaint in a lawsuit fails to state a claim for indirect patent infringement where the defendant's alleged knowledge of the asserted patents is based solely on the content of that complaint or a prior version of the complaint filed in the same lawsuit.").

## III.   STATEMENT OF FACTS

Mellaconic identifies only claim 1 of the '435 Patent as being allegedly infringed by Avast.  Claim 1 is reproduced below:

> 1. A method to perform an action, comprising:
>
> receiving, by a first device located at a first geographical location, one or more messages that:
>
> indicate geographical location information of a second device located at a second geographical location, and include a request for a first action to be performed by the first device, wherein the one or more messages are received from the second device, and wherein the geographical location information of the second device acts as authentication to allow the first action to be performed by the first device; and
>
> autonomously performing, based at least on the received one or more messages, by the first device, the authenticated first action.

Thus, claim 1 merely requires receiving a message that includes both a request to take some action and the location of the requestor, using the location information to authenticate the request, and then performing the requested action.

As discussed in the specification of the '435 Patent, the concept of "authenticating" a user was well-known, and the specification provides several examples of authentication: (1) "credit card or automatic teller machine

3

transactions" (*i.e.*, authentication using a PIN number); (2) "the ignition system of a motor vehicle" (*i.e.*, authentication using a car key); and (3) various electronic devices (*i.e.*, authentication using a password). '435 Patent at 8:31-39.

## IV.   ARGUMENT

### A.   The Claims of the '435 Patent Are Invalid Pursuant to 35 U.S.C. § 101

The claims of the '435 Patent are invalid under § 101 because they claim the patent-ineligible abstract idea of using location information to authenticate a user. And beyond that abstract idea, the claims merely recite generic computer elements performing generic computer tasks, which are insufficient to supply an inventive concept under step two of *Alice. See Capital One Bank*, 792 F.3d at 1368.

#### 1.   Legal Standard Under 35 U.S.C. § 101

The Supreme Court has established a two-step framework for determining whether an invention is an unpatentable abstract idea under § 101.  *Alice*, 573 U.S. at 217-218. At step one, the court must "determine whether the claims at issue are directed to a patent-ineligible concept." *In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d 607, 611 (Fed. Cir. 2016). If so, the process proceeds to the second step where the court searches for an "'inventive concept'—*i.e.*, an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." *Alice*, 573 U.S. at 217-218.

83487203.2

"In cases involving authentication technology, patent eligibility often turns on whether the claims provide sufficient specificity to constitute an improvement to computer functionality itself." *Universal Secure Registry*, 2021 WL 3778395, at *2. Indeed, the Federal Circuit has repeatedly found patent claims directed to "authenticating," "authorizing," or "permitting access" to devices based on a user's data to be a patent-ineligible abstract idea. *See Prism Techs. LLC v. T-Mobile USA, Inc.*, 696 F. App'x 1014, 1016 (Fed. Cir. 2017); *Elec. Commc'n Techs., LLC v. ShoppersChoice.com, LLC*, 958 F.3d 1178, 1181 (Fed. Cir. 2020). And "limiting the use of an abstract idea 'to a particular technological environment' ... is not enough for patent eligibility." *Alice*, 573 U.S. at 223.

### 2. Alice Step 1: The '435 Patent Claims Are Directed to an Abstract Idea.

#### (a) Using location information to authenticate a user is an abstract idea.

The claims of the '435 Patent are directed to the abstract idea of using location information to authenticate a user and perform some requested action. Representative claim 1 breaks this abstract idea up into a series of basic steps.[2] *See Ultramercial*, 772 F.3d at 714. Stripped of its generic technology components, the

---

[2] Avast submits that independent Claim 1 is representative of all independent claims in the '435 Patent. While the Complaint does not assert any other independent claim, the arguments made herein apply equally to other independent claims should Mellaconic decide to assert them in this action.

claim provides nothing more than the idea of verifying the user's location and then performing some action that is requested by the user. These activities have been done since the advent of locked doors: a guest arrives at a home and would like to be let inside; the guest rings the doorbell (or knocks); the host looks out a peephole or window to verify that a visitor is at the door; and the host opens the door. As illustrated by the analogous activities below, every limitation of claim 1 can be performed solely by human activity:

| '435 Patent, Claim 1 | Human Activity |
|---|---|
| 1. A method to perform an action, comprising: | The preamble is not limiting. |
| receiving, by a first device located at a first geographical location, one or more messages that: | Amy rings the doorbell at Bob's house. |
| indicate geographical location information of a second device located at a second geographical location, | The doorbell indicates that someone is at the door. |
| and include a request for a first action to be performed by the first device, | The doorbell ringing inherently includes a request to open the door. The request is related to Amy's location (*i.e.*, at Bob's door). |
| wherein the one or more messages are received from the second device, | Bob hears the doorbell ring. |

6

| | |
|---|---|
| and wherein the geographical location information of the second device acts as authentication to allow the first action to be performed by the first device; and | Bob looks through the window to verify that someone is at the door. |
| autonomously performing, based at least on the received one or more messages, by the first device, the authenticated first action. | Bob unlocks and opens the door. |

The only difference between the limitations of Claim 1 and the long-practiced human activity that mirrors them is the use of generic devices.

The idea claimed by the '435 Patent—using location information to authenticate a user and perform some requested action—is abstract under the framework provided by the Supreme Court. In *Alice*, the Supreme Court held that fundamental principles for "organizing human activity" are abstract ideas. *Alice*, 573 U.S. at 220-221. Using location information to authenticate a user is a "longstanding commercial practice," and as such is a "method of organizing human activity." *See id*. The Court in *Bilski* invalidated claims for the use of a computer intermediary that allowed a consumer with a computer to perform the same task that "would presumably have been done by a human broker in the prior art." *Bilski v. Kappos*, 563 U.S. 593 (2010). As one district court held, "[r]equesting and receiving location information is an abstract idea." *See Callwave Commc'ns, LLC v. AT&T Mobility, LLC*, 207 F. Supp. 3d 405, 412 (D. Del. 2016) (granting motion for judgment on the pleadings). Using

7

that location information for purposes of authentication—as the '435 Patent claims do—is still a method of organizing human activity and is therefore abstract. Indeed, the Federal Circuit reversed a district court's ruling that patents directed to security systems were patent-eligible, holding that "the asserted claims are directed to the abstract idea of providing restricted access to resources." *Prism Techs. LLC v. T-Mobile USA, Inc.*, 696 F. App'x 1014, 1017 (Fed. Cir. 2017). The '435 Patent too, provides restricted access to resources: it authenticates the "second device" based on location information, and then controls a third device (*i.e.*, provides access) on that basis.

This Court's decision in *Universal Secure Registry*, which was affirmed by the Federal Circuit, is instructive here. 469 F. Supp. 3d 231, *aff'd*, 2021 WL 3778395. In that case, this Court held "[t]he patents are directed to an abstract idea— the secure verification of a person's identity—and therefore fail step one of the *Alice* inquiry. And the patents do not disclose an inventive concept such as an improvement in computer functionality that transforms the abstract idea into a patent-eligible application of the idea." 469 F. Supp. 3d 231, 236 (D. Del. 2020). The Court reasoned that the claims at issue were similar to those rejected by the Federal Circuit in *Prism Technologies*. *Id.* at 237 (citing 696 F. App'x 1014 (Fed. Cir. 2017)). The Federal Circuit affirmed, reasoning that "verifying the identify of a user to facilitate a transaction is a fundamental economic practice that has been performed at the point

8

of sale well before the use of POS computers and Internet transactions." *Universal Secure Registry*, 2021 WL 3778395. The claims in the '435 Patent, too, are directed to authenticating a user before performing some action.

Several other district courts, too, have found claims abstract where they were directed to methods of authentication similar or analogous to those claimed in the '435 Patent. For example, one court granted judgment on the pleadings where the claims were directed "identifying an authorized user and providing information to that user." *West View Research, LLC v. Bayerische Motoren Werke AG*, 226 F. Supp. 3d 1071, 1078 (S.D. Cal. Dec. 30, 2016). The court held "[t]he concept of identifying a system user and then delivering user-specific content to that user's portable electronic device is an abstract idea." *Id.* The claims at issue in *West View* are analogous to those at issue here: both are directed at identifying an authorized user and performing some requested action.

Another court granted judgment on the pleadings on the basis that the asserted claims directed to BIOS authentication methods were ineligible. *Kinglite Holdings, Inc. v. Micro-Star Int'l Co.*, 2015 WL 6437836 at *8 (C.D. Cal. Oct. 16, 2015). The court held that the claims were directed to the abstract idea of "solv[ing] a problem of authentication for security purpose," and the problem was not "necessarily rooted in computer technology." *Id.* at *9. The court reasoned that the steps in the asserted claims "can be performed by human thought alone and thus are merely an abstract

9

idea." *Id.* at *8. The same is true of the claims in the '435 Patent, as illustrated by the example above.

Finally, another court granted summary judgment of patent ineligibility where the patent claims were directed to "a method of authenticating that a sender of a dispatch electrically transmitted it to a particular destination at a particular time and that it had a particular content." *GoDaddy.com LLC v. RPost Commcn's Ltd.*, 2016 WL 3165536 at *7, *10 (D. AZ. June 7, 2016) (holding the claims "are directed to a general method of collecting and providing information about a dispatch using a third-party intermediary. This is an abstract idea that has an extensive history dating back decades, if not centuries."), *aff'd*, 685 Fed. Appx. 992 (Fed. Cir. 2017). The claims of the '435 Patent are even broader and are abstract for the same reasons. Therefore, the '435 Patent claims fail step one of the *Alice* analysis.

> **(b)   The claims are not directed to an improvement to computer functionality.**

An otherwise abstract idea may be found to be non-abstract under step one of *Alice* if it is "directed to an improvement in computer functionality." *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1336 (Fed. Cir. 2016) (holding claims disclosing a "self-referential" database structure eligible due to the improvement of the specific "way a computer stores and retrieves data in memory."). "In cases involving authentication technology, patent eligibility often turns on whether the claims provide sufficient specificity to constitute an improvement to computer functionality

itself." *Universal Secure Registry*, 2021 WL 3778395, at \*2. But no such improvement exists in the '435 Patent.

The claims of the '435 Patent do not even recite a "computer," conventional or otherwise, let alone improve any computer functionality. As discussed above, the components recited by the claims of the '435 Patent are all generic components functioning in generic ways. The claimed "first device" and "second device" are merely generic devices, such as a cell phone, for sending and receiving messages. The specification provides examples of generic devices such as "a home appliance or an entertainment system, alarm" or a "medical device, which may be monitored and/or controlled by the user's cellular phone." '435 Patent at 6:45-55. There is nothing special about how the three claimed devices operate—they are each simply sending and receiving messages—and nothing in the '435 Patent suggests any type of improvement to the *way* the devices, or any other physical component, operates. *See buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1355 (Fed. Cir. 2014) ("That a computer receives and sends information over a network—with no further specification—is not even arguably inventive.").

Nor do the claims "overcome a problem specifically arising in the realm of computer networks." *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1257 (Fed. Cir. 2014). Using location information to authenticate a user and perform an action has been done for many years in both technical and non-technical solutions

11

(*e.g.*, verifying a guest waiting at the door). Additionally, the "Background" section of the '435 Patent identifies the problem that "[i]n their current form, services provided by the cellular phone generally require explicit interaction with the user." '435 Patent at 1:32-34. The '435 Patent makes clear that the primary issue being addressed was one of automation (*i.e.*, performing an action without "explicit interaction with the user"), and not a technical solution to a technical problem.

Thus, because the '435 Patent's claims are directed to the abstract idea itself of authenticating a user using location information and not an improvement to computer functionality, the claims are directed to a patent-ineligible concept under the first step of the *Alice* framework. *Alice*, 573 U.S. at 218.

### 3.   *Alice* Step Two: The '435 Patent Claims Fail to Recite an Inventive Concept, Either as Individual Elements or as an Ordered Combination.

In the second step of the *Alice* analysis, the Court must determine whether the claims contain some additional "'inventive concept' sufficient to 'transform' the claimed abstract idea into a patent-eligible application." *Alice*, 573 U.S. at 221. The specification and intrinsic record are guides in determining what is well-known, routine, and conventional at the time of the invention—2009 for the '435 Patent. *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 890 F.3d 1354, 1356 (Fed. Cir. 2018); *see Automated Tracking Sols., LLC v. Coca-Cola Co.*, 723 F. App'x 989, 995 (Fed. Cir. 2018) (affirming grant of Rule 12 motion under § 101 when specification

indicated that claimed components were conventional). The '435 Patent claims fail *Alice*'s second step because the claims do not contain any such "additional features" sufficient "to ensure that the [claims] [are] more than a drafting effort designed to monopolize the [abstract idea]." *Id.* (quoting *Mayo*, 566 U.S. 66, 77-78 (2012)).

The claimed hardware components are all generic computing devices that do not amount to "significantly more" than is required to transform the abstract idea into patent-eligible subject matter. "[M]erely reciting an abstract idea performed on a set of generic computer components ... would 'not contain an inventive concept.'" *Two-Way Media*, 874 F.3d at 1339 (quoting *BASCOM Glob. Internet Servs., Inc. v. AT&T Mobility LLC,* 827 F.3d 1341, 1350 (Fed. Cir. 2016)). That is precisely what the claims of the '435 Patent do here. Unlike in *BASCOM*, where an inventive concept was "found in the non-conventional and non-generic arrangement of known, conventional pieces," the hardware components claimed in the '435 Patent are described by the specification as generic and conventional. *See BASCOM*, 827 F.3d at 1350. For example, in reference to the claimed "devices," the '435 Patent states that "[c]ellular phones have achieved amazing market penetration worldwide and have become commonplace in modern life." '435 Patent at 1:29-32. The specification further states that "[u]ser interface 206 may be configured to support one or more user input and/or output devices through which a user may input commands and data or observe output information. Such devices may include a display device, a speaker,

13

a microphone, a keyboard, a pointing device (e.g., a mouse, a trackball, or a touch pad), or the like." *Id*. at 3:49-54. These devices are all well-known and generic. *See Prism Techs. LLC v. T-Mobile USA, Inc.*, 696 F. App'x 1014, 1018 (Fed. Cir. 2017) ("The patents-in-suit themselves demonstrate the conventional nature of these hardware identifiers") (reversing district court's ruling that asserted security systems patents were patent-eligible).

The devices are claimed in the '435 Patent as having the ability to send and receive messages containing a request and location information. '435 Patent at 14:2-13. Any generic computer would be expected to operate in this manner. *See Two-Way Media*, 874 F.3d at 1339 ("Nothing in the claims or their constructions, including the use of 'intermediate computers,' requires anything other than conventional computer and network components operating according to their ordinary functions."); *TLI Commc'ns*, 823 F.3d at 611 (claimed "server" and "telephone unit" "merely provide a generic environment in which to carry out the abstract idea of classifying and storing digital images in an organized manner"); *West View Research*, 226 F. Supp. 3d at 1078 ("[t]he physical components of the claims, such as an antenna or interrogator apparatus, a radio frequency device, a processing apparatus, a personal electronic device are generic descriptions of well-known components used to carry out this abstract function.").

14

Further demonstrating their ineligibility, the claims are directed to functional, result-oriented steps that are a "hallmark of claims commonly found invalid under Section 101." *Callwave*, 207 F. Supp. 3d at 414; *see Elec Power Grp.*, 2016 WL 4073318, at *6 ("Indeed, the essentially result-focused, functional character of claim language has been a frequent feature of claims held ineligible under Section 101"); *TLI Commc'ns*, 823 F.3d at 615 ("the specification limits its discussion of these components to abstract functional descriptions devoid of technical explanation as to how to implement the invention ... such vague, functional descriptions of server components are insufficient to transform the abstract idea into a patent-eligible invention."). Indeed, claim 1 merely requires (i) "receiving" "one or more messages" "by a first device" and (ii) "performing" a "first action". '435 Patent at 11:38-51. Claim 1 identifies the contents of the message to be sent: the message must include location information of the sending device and a request for an action to be performed. *Id.*, 11:41-48. None of this provides an inventive concept sufficient to transform the claimed abstract idea into a patent-eligible application.

Nor does the ordered combination of elements provide an inventive concept. The recited functions simply describe receiving a message and then performing the request in the message according to the ordinary and conventional ordering of steps. *See Two-Way Media*, 874 F.3d at 1339 (claim using a "conventional ordering of steps—first processing the data, then routing it, controlling it, and monitoring its

reception—with conventional technology to achieve its desired result" does not contain an inventive concept). In any implementation of electronic communication, information must be transmitted by a sending device and received by the receiving device. *See* '435 Patent at 11:39-48. Similarly, "performing" an action based on the request is a routine, conventional step fundamental to one of the purposes of transmitting messages between devices. *See id.* at 11:49-51. Just as in *Universal Secure Registry*, there is nothing in the specification of the '435 Patent suggesting, or any other factual basis for a plausible inference (as needed to avoid dismissal), that the claimed combination of steps achieves more than their expected sum. 2021 WL 3778395, at *8. These steps are not inventive either individually or as an ordered combination and fail under the "inventive concept" test under the *Alice* step two analysis.

### 4.      The Unasserted Claims of the '435 Patent Similarly Fail under § 101.

The Federal Circuit has made clear that, for determining eligibility under *Alice*, it is sufficient to examine a subset of the claims as long as "the claims of the asserted patents are substantially similar in that they recite little more than the same abstract idea." *Content Extraction & Transmission LLC v. Wells Fargo Bank, NA*, 776 F.3d 1343, 1348-49 (Fed. Cir. 2014). In this case, as in *Content Extraction*, all other claims of the '435 Patent are directed to the same abstract idea as representative claim 21: using location information to authenticate a user and perform an action.

16

Focusing first on the remaining independent claims of the '435 Patent, claims 8, 14, 20 and 21 recite the same generic components as claim 1 and generic functional steps that would be expected to be performed by devices transmitting and receiving messages (e.g., "receiving ... a call or a message"). *See* '435 Pat. at 12:7-21 (claim 8), 12:39-61 (claim 12), 13:15-35 (claim 20), 14:1-16 (claim 21). Indeed, each of these claims recites a "receiving" step in which a device receives a message that (a) indicates a location of a second device, and (b) includes a request for an action to be performed. The claims require the location of the second device to be used in authenticating the action to be performed. The claims then go on to require performance of the said action. Claim 20, adds generic method steps of "collecting and storing data" and requires performance of an action based on a "condition being satisfied" rather than location information.

The dependent claims recite ordinary field of use limitations, specifying the type of "location" or "action," or specifying the generic components claimed (*e.g.*, a mobile device). *See* '435 Patent at 14:17-18 (claim 22), 14:31-32 (claim 28). None of the claims of the '435 Patent survive § 101 for the same reasons as explained above.

### 5.    Dismissal is Appropriate Because No Material Factual Disputes Exist.

Dismissal at the outset is appropriate here before the parties and the Court expend resources litigating an invalid patent. Dismissing patent infringement claims at the

pleading stage "conserv[es] scarce judicial resources," "provid[es] a bulwark against vexatious infringement suits," and "most importantly, ... protect[s] the public" by "weeding out those patents that stifle innovation and transgress the public domain." *Ultramercial*, 772 F.3d at 718-19 (Mayer, J., concurring opinion); *see Cleveland Clinic Found. v. True Health Diagnostics LLC*, 859 F.3d 1352, 1360 (Fed. Cir. 2017). In many cases even where the patent owner has alleged an inventive concept, no genuine disputes of fact precluded dismissal at the pleadings stage. *Berkheimer v. HP Inc.*, 890 F.3d 1369, 1373-74 (Fed. Cir. 2018). Plaintiff's Complaint makes no allegations that the claims are directed to a non-abstract idea or an improvement to computer functionality. More importantly, no reasonable construction of the terms in the patent claims would bring the '435 Patent within the ambit of patentable subject matter because the specification and claims make clear that the claimed components are merely generic computing devices.

### B.    Plaintiff's Indirect Infringement Claim Should Be Dismissed

As to Plaintiff's indirect infringement allegations, the Complaint purports to base Avast's knowledge of the '435 Patent on the filing of the Complaint.  Compl. ¶ 28 ("Defendant has had knowledge of infringement of the '435 Patent at least as of the service of the present Complaint.").  This is plainly insufficient to state a claim for indirect infringement, and the claim should thus be dismissed.  *ZapFraud, Inc. v. Barracuda Networks, Inc.*, 528 F. Supp. 3d 247, 252 (D. Del. 2021) ("[T]he

operative complaint in a lawsuit fails to state a claim for indirect patent infringement where the defendant's alleged knowledge of the asserted patents is based solely on the content of that complaint or a prior version of the complaint filed in the same lawsuit.").

## V.   CONCLUSION

For the foregoing reasons, Avast respectfully requests that the grant its motion to dismiss Plaintiff's Complaint for failure to state a claim.

POLSINELLI PC

/s/ Stephen J. Kraftschik
Stephen J. Kraftschik (#5623)
222 Delaware Avenue, Suite 1101
Wilmington, DE 19801
(302) 252-0924
skraftschik@polsinelli.com

OF COUNSEL:

William B. Kircher
AVEK IP, LLC
8900 State Line Road, Suite 500
Leawood, KS  66206
(913) 549-4700
bkircher@avekip.com

*Attorneys for Defendant*

May 18, 2022

19

## **<u>WORD COUNT CERTIFICATION</u>**

The undersigned counsel hereby certifies that the foregoing document contains 4,491 words, which were counted using the word count feature in Microsoft Word, in 14-point Times New Roman font.  The word count does not include the cover page, tables of contents and authorities, or the counsel blocks.

*/s/ Stephen J. Kraftschik*

_____
Stephen J. Kraftschik (#5623)

1

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 18, 2022, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on May 18, 2022, upon the following in the manner indicated:

Jimmy Chong                                              *BY ELECTRONIC MAIL*
CHONG LAW FIRM PA
2961 Centerville Road, Suite 350
Wilmington, DE  19808
chong@chonglawfirm.com
*Attorneys for Plaintiff*

Andrew S. Curfman                                       *BY ELECTRONIC MAIL*
SAND, SEBOLT & WERNOW CO., LPA
Aegis Tower, Suite 1100
4940 Munson Street NW
Canton, OH  44718
andrew.curfman@sswip.com
*Attorneys for Plaintiff*

/s/ *Stephen J. Kraftschik*
_____
Stephen J. Kraftschik (#5623)